UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| ROY LESTER WHITE, | ) | CASE NO. 15-63069-crm |
| | ) | |
| Debtor. | ) | |
| | ) | |
| NATIONAL ERA SERVICING, LLC, | ) | |
| Movant, | ) | CONTESTED MATTER |
| | ) | |
| vs. | ) | |
| | ) | |
| ROY LESTER WHITE, Debtor | ) | |
| and TAMARA MILES OGIER, Trustee, | ) | |
| | ) | |
| Respondents. | ) | |

## NOTICE OF HEARING

**PLEASE TAKE NOTICE** that **NATIONAL ERA SERVICING, LLC** has filed a Motion for Relief from Stay and related papers with the Court seeking an Order Granting Relief from the Automatic Stay.

**PLEASE TAKE FURTHER NOTICE** that the Court will hold a hearing on the Motion for Relief from Stay in Courtroom 1203, United States Courthouse, 75 Spring Street, S.W., Atlanta, Georgia, at 10:00 A.M. on August 27, 2015.

Your rights may be affected by the court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the court to grant the relief sought in these pleadings or if you want the court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk at least two business days before the hearing. The address of the Clerk's Office is Clerk, U. S. Bankruptcy Court, Suite 1340, 75 Spring Street, Atlanta Georgia 30303. You must also mail a copy of your response to the undersigned at the address stated below.

If a hearing on the motion for relief from the automatic stay cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the motion and agrees to a hearing on the earliest possible date. Movant

consents to the automatic stay remaining in effect until the Court orders otherwise.

Dated: August 13, 2015

                Respectfully submitted,

                /s/ Shannon D. Sneed
                Shannon D. Sneed, Bar No. 665610
                SHANNON D. SNEED & ASSOCIATES, P.C.
                P.O. Box 1245
                2112 Lee Street
                Covington, Georgia 30015
                (770) 788-0011 *Telephone*
                (770) 788-1702*facsimile*
                bankruptcy@sneedlaw.net
                *Attorneys for NATIONAL ERA SERVICING, LLC*

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: ) | CHAPTER 7 |
| ) | |
| ROY LESTER WHITE, ) | CASE NO. 15-63069-crm |
| ) | |
| Debtor. ) | |
| _____ ) | |
| NATIONAL ERA SERVICING, LLC, ) | |
| Movant, ) | CONTESTED MATTER |
| ) | |
| vs. ) | |
| ) | |
| ROY LESTER WHITE, Debtor ) | |
| and TAMARA MILES OGIER, Trustee, ) | |
| ) | |
| Respondents. ) | |
| _____ ) | |

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

COMES NOW Movant named above and shows this Court the following:

1.

This Motion is made pursuant to Section 362(d) of the Bankruptcy Code for relief from the automatic stay for all purposes allowed by law and the contract between the parties, including, but not limited to, the right to proceed with an eviction against the Debtor pursuant to her violation of a residential lease agreement between the parties.

2.

Movant is the owner of certain real property located at 1608 Piccadilly Court NE, Conyers, GA 30013, which they leased to the Debtor on February 28, 2014. A copy of the lease is attached hereto as Exhibit "A" and made a part hereof.

3.

Debtor filed the instant case on July 13, 2015, 2015. Debtor has defaulted on rental payments which have come due since the bankruptcy filing. Debtor's prepetition arrearage is $2141.92. Debtor's post-petition arrearage is $1070.00.

5.

Because of the Debtor's post-petition default on payment of rent, Movant is not adequately protected and should be permitted to proceed with the eviction process. Movant has suffered and continues to suffer irreparable harm because of the Debtor's default.

6.

Movant shows that the provisions of Bankruptcy Rule 4001(a)(3) should be waived.

**WHEREFORE,** Movant prays for an Order lifting the automatic stay, and authorizing them to proceed with the exercise of their right of eviction after default under the residential lease agreement and appropriate state statutes. Movant also prays that the provisions of Bankruptcy Rule 4001(a)(3) be waived, so that any Order entered will be enforceable immediately upon entry, for reasonable attorney's fees, and for such other and further relief as is just and equitable.

Dated: August 13, 2015

                                            Respectfully submitted,

                                            /s/ Shannon D. Sneed
                                            Shannon D. Sneed, Bar No. 665610
                                            SHANNON D. SNEED & ASSOCIATES, P.C.
                                            P.O. Box 1245
                                            2112 Lee Street

Covington, Georgia 30015
(770) 788-0011 *Telephone*
(770) 788-1702*facsimile*
bankruptcy@sneedlaw.net
*Attorneys for THE AMERICAN HOME*
*OPERATING PARTNERSHIP LP*

**NATIONAL ERA SERVICING**

# GEORGIA
# RESIDENTIAL LEASE AGREEMENT

Agreement Date: __February 28, 2014____

READ THIS CAREFULLY! THIS IS *NOT* AN AVERAGE RENTAL CONTRACT! It requires a far higher level of tenant responsibility and self support for which you will receive a monthly discount from market rents to compensate you for your extra effort. By signing this document you warrant that you understand all the terms and conditions under which the Landlord has agreed to entrust his property to you. You are prepared to perform the normal duties of the Landlord yourself, or to have them performed by someone else at your expense. In return you expect the Landlord to give you more discretion to make your own decisions about maintaining the house and grounds and to offer you stable rents over a relatively long term.

Per this Agreement (hereinafter called "Lease") between National ERA Servicing, LLC (hereinafter called "Management") and ___ROY WHITE and DORA MCLEAN___ (called "Resident"), Management leases to Resident and Resident leases from Management the property known as : ____1608 Picadilly Ct Conyers GA___ (hereinafter called "Premises") under the following conditions:

1. **Occupants:** All Residents intending to occupy Premises are listed above and agree to sign this Lease. Dependents intending to occupy must be listed on this lease and are: _ JAVIER WHITE___. Resident warrants the above mentioned persons shall be the only occupants of the Premises except for short-term visitors (7 consecutive days or less). The total number of Residents and dependents occupying Premises shall not exceed __3__, without written permission of Management.

2. **Delivery of Premises:** This Lease shall begin 12:00 noon ___March 1, 2015_ and end 12:00 noon the last day of _February 28, 2018___ (hereinafter referred to as the "Anniversary Date"). If there is a delay in delivery of occupancy by Management, rent shall be abated on a daily basis until possession is granted. If occupancy is not granted within seven (7) days after the beginning of original term, then Resident may void this Lease and have full refund of any deposit. Management shall not be liable for damages caused by a delay except as noted in this paragraph.

3. **Automatically renewable term of Lease:** Upon the Anniversary Date, this Lease shall be automatically renewed, for up to five consecutive twelve moth periods, unless either party provides the other written notice, at least sixty days prior to an Anniversary Date, of their desire not to renew for another twelve months. Should the Resident fail to renew this Lease at the end of the fourth Anniversary Date, and this Lease reverts to a Tenancy at Will under Georgia Law, the rent amount shall increase to 105% of the then Current Rent, unless a completed signed lease extension has been executed by all parties.

4. **Rent:**
The amount of the rent will be $950.00____due in advance on or before **THE 1st DAY OF EACH MONTH.** If it is not received by that time, Tenants agree to pay a late charge of 10% of the monthly rent amount. If Tenants pay by check, and the check is returned for any reason, Tenants will be charged 4% of the amount of the check in addition to the above charges.
Rent payment is critical! No excuses will be accepted for non-payment, including ill health, accident, loss of job, financial problems, family emergencies, etc.! FAILURE TO PAY RENT WHEN DUE WILL RESULT IN IMMEDIATE TERMINATION OF THIS RENTAL AGREEMENT AND EVICTION.

   A) **Checks:** If rent is late, or the bank, for any reason, refuses any check, all payments at that time must be made in certified funds. If a check is returned, and in accordance with Georgia Law, Resident agrees to pay a minimum of $30.00 or 5% of the check amount, whichever is greater, but not to exceed a total charge of $500, plus a late charge as defined above. Management may require any future payments to be made by, certified check or money order. Management may, upon 15 days written notice, require certified funds for any reason.
   B) **Allocation:** All funds received from Resident shall first be applied to outstanding late fees, NSF fees, administration fees, warrant fees, maintenance charge backs, and any other fees due Management under this Lease, and the remainder to rent.
   C) **Prohibition against withholding rent for repairs:** The Resident is prohibited from making any repairs or renovations to the home without the express written consent of Management. In the event the Resident does so without the consent of Management, the Resident shall not, under any circumstances, deduct the sums of those repairs from any rents due and payable.
   D) **Rent Escalation Clause:** The rent shall increase on each year in the amount of 5% (five percent) of the then current rent. The new rent amount shall be known as the current rent. Management must give Resident seventy-five days written notice if a rent increase is different rate than that agreed to above.

5 **Additional Charge:** As an incentive to assume full responsibility for repairs and continuing maintenance of the property, a charge in the amount of $75.00 will be added to the account for having landlord send someone out. It works like a deductible insurance policy. Tenants must pay the first $75.00 each month for PARTS AND MATERIALS needed to maintain the property and the Landlord will pay any costs above that amount, **unless repair was caused by the tenant.** Providing that Tenants meet these conditions, they will not have the $75.00 charge on their account. BEWARE! TENANT

5. **Security Deposit:** Resident agrees to pay a refundable security deposit of $\_400.00\_\_\_ for fulfillment of Resident's obligations under the terms of this Lease, which sum includes deposits for pets as otherwise prescribed herein. The Security deposit will be returned, without interest, within one month after the termination of this Lease, or the surrender and acceptance of the Premises, unless retained by Management for such causes as provided for in this Lease. In the event the Landlord suffers a foreclosure, all deposits and non-disbursed rents, less any fees due Management, will be disbursed as determined by state statute or regulation, or as specified by federal law.

   A) **Trust Account:** Resident acknowledges and agrees that said security deposit may be placed in an interest bearing account and that Management will retain interest earned, if any. The security deposit shall be deposited and held in a registered trust account at Chase Bank, Lutz, FL 33558, within five banking days of receipt by Management. All deposits must be held by broker if the Owner (or Owner's spouse or minor children) owns more than ten rental units, or if the Owner is a licensed real estate agent in the state of Georgia.

   B) **Return of Deposit:** Management will refund the deposit to Resident(s) within 30 days from the date of termination of this Lease. However, Management may use, apply or retain all or part of the security deposit to the extent required for the payment of any sum which Resident owes to Management herein, or for any sum which Management may expend for actual damages arising out of or related to Resident's abandonment of the Premises, or default in respect to any of the terms, or provisions of the Lease, provided that Management attempts to mitigate said actual damages, including but not limited to any repair, replacement, cleaning, or painting of the Premises rendered necessary or desirable by reason of the negligence, carelessness, accident or abuse by Resident or the invitees, guests, or members of Resident's household beyond the ordinary wear and tear, or to pay or apply against any other amounts owned by Residents to Management as permitted by law.

   C) **Not an Exclusive Remedy:** The application of the security deposit by Management shall at all times be at the sole discretion of Management in accordance with this Lease and Georgia law. The appropriation of all or part of this security deposit shall not be an exclusive remedy for Management, but shall be cumulative and in addition to all other remedies of Management at law or under this Lease. The security deposit may not be applied by Resident to rent under any circumstances.

   D) **Security Deposit Held by Management:** If Management is holding the Security Deposit, Management shall be responsible for timely preparing the move-out statement and delivering the same to Resident along with the balance of the Security Deposit, if any, prior to the due date. In fulfilling its obligations hereunder, Management shall reasonably interpret this Lease to ensure that the Security Deposit is property disbursed. Notwithstanding the above, if there is a bona fide dispute over the Security Deposit, Management may, (but shall not be required to), upon notice to all parties having an interest in the Security Deposit, interplead the funds into a court of competent jurisdiction. Management shall be reimbursed for, and may deduct from any funds interpleaded, its costs and expenses including reasonable attorney's fees actually incurred. The prevailing defendant in the interpleader lawsuit shall be entitled to collect its attorney's fees, court costs, and the amount deducted by Management from the non-prevailing party. All parties hereby agree to indemnify and hold Management harmless from and against all claims, causes of action, suits and damages arising out of or related to the performance by Management of its duties hereunder. All parties further covenant and agree not to sue Management for damages relating to any decision of Holder to disburse the Security Deposit made in accordance with the requirements of this Lease, or to interplead the Security Deposit into a court of competent jurisdiction.

6. **Damage Inspection:** Resident acknowledges receipt of a comprehensive listing of any existing damages to the Premises, which receipt was prior to the tender of the security deposit. Resident must sign said list, or sign a written dissent listing damages claimed to exist in or on the Premises prior to occupancy. Residents will indicate on the move-in inspection record, everything on or about the property needing repair regardless of significance. This will establish the initial condition according to the Resident. Management will not repair any cosmetic or nonfunctional items such as carpet blemishes, chipped sinks, etc., nor do any painting inside our out, or do any other repairs unless specifically agreed to by Management in writing prior to move-in. The purpose of this inspection is to document the condition of the premises before resident takes possession, not to create a punch list of repairs to be completed. The move-in inspection shall not be viewed by either party as a list of things promises to be repaired or replaced by Management. The tenant The Premises is accepted in "as is" condition by Resident. This must be received by management within the days after the tenant took possession of the property/

7. **Property Condition After Termination:** Within three business days following the date of termination of occupancy, Management will inspect the Premises, and compile a comprehensive list of any damages done to the Premises during Resident's occupancy, which list shall be acknowledged by Management. Resident shall have the right to inspect Premises within five business days after the termination of Resident's occupancy to ascertain the accuracy of the list. Resident shall acknowledge the list, and this shall be conclusive evidence of the accuracy of the list. If the Resident refuses to sign the list, Resident shall have five business days from the date the list is presented to state specifically, in writing, items on the list to which Resident dissents, and to deliver such list to Management. If Resident fails to provide such a list of dissention, or fails to provide such a list in a timely fashion pursuant to the time frames contained in this paragraph, the list, as compiled by the Management, shall be deemed accurate, true, correct and comprehensive by the Resident. If the Resident terminates occupancy without notifying Management, Management may make said move-out inspection within a reasonable time after discovering the termination of occupancy. In the event Management elects to retain any part of the security deposit,

8. **Access for Inspection:** Management shall have the right of access of Premises for inspection and maintenance between 9 a.m. and 6 p/m/ daily, except in case of emergency, as defined at the sole discretion of Management. Courtesy calls will be attempted, but are not required. Management may enter at any time to protect life or prevent damage to the Premises.

9. **Access for Marketing:** During the last sixty days of Resident's occupancy, Management, shall have the right to place yard signs on the Premises, and shall have the unrestricted right of entry to Premises via a lock box and key, between the hours of 9 a.m. and 6 p.m. daily, for the purpose of showing the Premises. Resident agrees to use prudent judgment in securing jewelry and other valuables at all times, but especially during the times the Premises may be for sale or lease, and agrees to hold Management harmless for any loss thereof. Courtesy calls will be attempted, but are not required when showing the property for sale or lease. Should Resident attempt to limit or restrict said entry during these stated times, Resident shall be in default of this Lease and Management may demand an amount equal to the security deposit as liquidated damages, as the parties agree that it would be impossible to accurately estimate actual damages resulting from such breach, and that the security deposit is reasonable compensation.

10. **Locks and Alarm System:** Landlord suggests that Tenants have all locks to the property re-keyed for their protection. Tenants agree that one key shall be made to operate all locks on the premises and Tenants warrant that all copies of this key shall be provided to Landlord when Tenants vacate the premises. Tenants are further authorized to have one deadbolt installed on each exterior door of the property (if not already present) at their expense. Tenants further agree that they are responsible for any and all damage caused to doors, door jambs and door frames due to unprofessional lock installation.

11. **Subletting:** No subletting or assignment of this Lease is permitted. Assignment of any portion of this Lease or subletting any portion of Premises without obtaining written permission from Management shall be deemed a breach of this Lease and may result in termination, for which early termination penalties shall apply.

12. **Return of Premises:** Resident shall return the Premises to Management in good order and repair, upon termination or expiration of this Lease, leaving said Premises in a clean and sanitary condition. Said condition includes, but is not limited to, cleaning of all appliances and removal of all trash, garbage, rubbish and personal property from the Premises and yard and returning keys and garage remote control door openers to Management. Whenever Management is entitled to possession of Premises under the terms of this Lease, Resident shall at once surrender Premises to Management.

13. **Use:** Premises shall be used for residential purposes only and shall be occupied only by persons named in this Lease. Premises shall be used so as to comply with all state, county, municipal laws and local ordinances. Resident shall not use Premises, or permit same to be used, for any unlawful purpose or in any manner so as to interfere with other Resident's quiet enjoyment of their property. Any unauthorized use of the Premises shall be deemed an event of default of this Lease.

14. **Resident's personal property:** Management shall not be liable for damages to Resident's personal property of any type for any reason or cause whatsoever, except where such is due to Management's sole gross negligence. Resident is required to obtain renters insurance prior to move in. Lease can be voided and no money will be refunded if insurance is not obtained.

15. **Pest Control:** At all times during occupancy, Resident shall be responsible for pest control of all kinds, except for termites. Resident is encouraged to use licensed pest control contractors to treat for pests or rodents.

20. **Pets:**
NO PETS ARE EVER ALLOWED ON THE PREMISES UNLESS WRITTEN PERMISSION HAS BEEN OBTAINED IN ADVANCE FROM THE LANDLORD. If permission is given, no more than 2 pets are ever allowed (excluding tropical fish). There will be a monthly charge of $25.00 added to the monthly rent for each pet. If Tenants have pets, they must be listed and by listing them Tenants agree to be fully liable for damages and injuries they might cause to both property and people. Any pets not listed below which are found on the property will be presumed to be strays and will be disposed of by the appropriate agency as prescribed by law.

Permission has been given for the pet(s) listed below:

Name:          Type:

Name:          Type

Tenants specifically understand and warrant:
  a. That the pet(s) if they are dogs, have not been attack-trained nor are they known to be vicious nor do they have a history of biting people or animals or causing property damage.
  b. That they are solely responsible for any and all damage or loss to the Landlord's property caused by their pets including, but not limited to, the premises, carpeting, draperies, wall coverings, furnishings, appliances and landscaping including the lawn and shrubbery.
  c. That all pet waste shall be removed and disposed of promptly.
  d. That all pets shall be maintained so as not to cause annoyance or irritation to others.

21. **Indemnification:** Resident releases Management from liability for, and agrees to indemnify Management against, all losses incurred by Resident as a result of:
  A **Failure to comply:** Resident's failure to fulfill any condition of this Lease;
  B **Residents invitees:** Any damage or injury happening in or about the Premises to Resident, Resident's invitees or licensees of such person's property;
  C **Judgments or Liens:** Any judgment, lien, or other encumbrance filed against Premises as a result of Resident's action

22. **No waiver:** Any failure of Management to seek redress of a violation of, or to insist upon the strict and prompt performance of, any covenants or conditions of this Lease, shall not operate as waiver of any such violation, or of Management's right to insist on prompt compliance in the future with such covenant or condition, and shall not prevent a subsequent action by Management for any such violation. Acceptance by Management of any late payment of rent, or additional rent, shall not constitute a waiver of any rights of Management, including without limitation, the right to terminate this Lease as herein provided. The receipt of any rent, or additional rent, by Management with the knowledge of such breach shall not operate as a waiver of such breach. No provision, covenant, or condition of this Lease may be waived by Management unless such waiver is in writing and signed by Management.

23. **Time is of the Essence:** All references to any notice required to be given, or due dates for rental payments, shall be strictly construed, and any binding notice required herein shall be in writing, hand-delivered, or mailed registered or certified mail in accordance with the provisions herein, or in accordance with Georgia law.

24. **Authorized to Manage:** For purposes of compliance with the provisions of O.C.G.A. 44-7-3, Management hereby states that National ERA Servicing, LLC (Anthony Salmeri, Broker) whose address is 19239 N. Dale Mabry Hwy., # 138, Lutz, Fl. 33548-5067, is authorized to manage the Premises, and to act for and on behalf of Management for purposes of servicing or process and receiving and receipting for demands and notices..

25. **Failure to Pay Rent:** If Resident fails to pay rent or any other sum when due, or otherwise fails to abide by and perform any of the obligations, terms, conditions, or provisions of this Lease, including but not limited to, failure to reimburse Management for any damages, repairs, or costs when due, abandonment of the Premises, or violation of any rules and regulations set forth herein, each and any such breach shall constitute a default under this Lease. In the event Resident continues to occupy the property while in default of the terms of this Lease, the incident shall be considered an act of holding over and rent shall be due and payable at the rate of three times the daily prorated rental, until paid in full.

26. **Right to Terminate:** If any default continues for three calendar days after written notice of breach, Management may, at its option, terminate this Lease by written notice to Resident.

27. **No Trespass by Management:** Any action hereunder by Management shall not prejudice any rights of action against Resident as provided in this Lease or by law, and Management shall not be guilt of trespass or forcible entry as a result of such entry and repossession of the Premises by Management.

28. **Early Termination by Resident:** Provided Resident is not in default hereunder at the time of giving notice, has strictly complied with all of the provisions of this Lease, and is current with all fees due Management, Resident may terminate this Lease before the expiration date by doing all of the following:
    A   Giving Management at least sixty days written notice sent by certified or registered mail, return receipt requested.
    B   Paying an amount equal to two month's rent.
    C   Returning the Premises in clean and ready to rent condition.
    D   Paying a $1,000 administration fee as liquidated damages, as the parties agree the precise amount of advertising costs, length of vacancy, and other factors are impossible to ascertain at the outset, and that the sum set forth in this paragraph is reasonable compensation for breach by the Resident under this paragraph. The foregoing shall not relieve Resident of his/her responsibilities and obligations regarding any damages to Premises. No pro-ration will be given for percentage of lease term completed by Resident.

29. **Early Termination by Management:** Resident agrees that Management may terminate the lease prior to the lease expiration date and Resident agrees to vacate the property if the following conditions are met:
    A   Management gives resident sixty (60) days written notice to vacate (Resident still owes rent through the sixty (60) day period.)
    B   Management pays to Resident an amount equal to one month's rent as compensation for disturbing resident's quiet enjoyment of the property, and for the inconvenience of moving early. This credit will be applied to the resident account at the time the resident vacates the property and will be included with any applicable security deposit refund. The foregoing shall not relieve the Resident of his or her responsibilities and obligations regarding any damages to the property.

30. **Non-Operative Vehicles:** Non-operative vehicles are not permitted on Premises. Management may remove any such non-operative vehicle, or any vehicle parked on grass, at the expense of Resident, for storage or public or private sale at Management's option, and Resident owning same shall nave no right of recourse against Management thereafter.

31. **Storage:** Resident agrees not to store any materials on the Premises, of any kind or description that are combustible, flammable, hazardous, or would increase the risk of a fire and any violation of this paragraph may serve as a basis for declaring the Resident in default. Any unauthorized storage of said materials shall be at the Resident's risk and Resident shall indemnify Management, and the Owner of the Premises, for any damages resulting from, and any los caused by, said materials. Should Resident leave hazardous material in or around the Premises at the time of vacating, Management shall remove same, and Resident agrees to pay said cost of removal.

32. **Housekeeping:** The Resident agrees to maintain the Premises in as good a state as found on move-in, reasonable wear and tear accepted. Resident agrees to keep the Premises in a clean and sanitary condition, to keep the yard clean, mowed, and free of rubbish, and to comply with any neighborhood covenants, rules or regulations that govern the condition of the Premises.

33. **Utilities:** Charges for garbage, water, sewer, electricity, gas, television cable or satellite services, and security monitoring shall be the responsibility of Resident from the day of Possession, unless otherwise specified herein, until the move out inspection has been completed by Management. Resident agrees to keep electric, gas and water utilities, on through the date of the move-out inspection. If the utilities are turned off prior to the move-out inspections Resident agrees to pay

services. Resident must provide proof of final payment of all utilities, as well as return of all keys and garage door remote control openers to the office of Management prior to Management's refund of any security deposit.

34. **Other Utility Services:** Any location and means of installation and repair and /or maintenance of any telephone, cable TV, satellite, Internet or date wiring and/or systems are the sole responsibility of Resident, but must be approved, in advance, by Management. Management does not warrant and shall not be responsible for any portion of any telephone, cable, satellite, Internet or data wiring and/or systems serving Property.

35. **Breach of Agreement:** If either Party breaches this Agreement, the Offending Party agrees to pay all costs of collection of said sums if they must be collected by an attorney at law. The Offending Party also agrees to pay any unpaid charges (including charges allowed under this Agreement and including damages to the Premises) within five days of the time the Offended Party is notified of the breach. After five days, if the Offending Party fails to pay the unpaid charges demanded, it shall be required to pay, in addition to the sums demanded, an amount equal to thirty percent of the above-described unpaid charges, including charges allowed under this Agreement and including damages to the Premises caused by the Offending Party, as an administrative collection fee. In addition, the Offending Party hereby agrees to pay any and all costs of collection of any unpaid charges, rent or damages owing under this Agreement including but not limited to the costs of a collection agency plus the costs of an attorney if such sums are collected by an attorney at law. The Offending Party shall also pay any and all costs, including mediation and arbitration fees, attorneys' fees and costs, and any fees and costs awarded by a court of law, if such sums are collected through a legal proceeding.

36. **Approval of Cosmetic Change:** Resident may paint, wallpaper, or otherwise change the cosmetics of the Premises as long as Management approves of Resident's selection of materials and quality of workmanship, in writing, in advance of said work. In any event, Resident agrees to return Premises to its original condition, or reimburse Management the cost of restoration upon move-out.

37. **Approval of Structural Changes:** Resident may remodel and make structural changes only with Management's written permission and approval of materials and workmanship. Resident has no authority to incur any debt, or make any changes to the Premises, or to create any lien upon said Premises for work done or material furnished, or to act as agent for Management at any time for any purpose.

38. **Quality of Changes:** Resident warrants that any repairs, refurbishments or work performed on the Premises by Resident or performed by anyone hired, retained or appointed by Resident, within the purview of this Lease, will be done in a good and workmanlike manner, and will be undertaken only by qualified professionals under the direct supervision of the Resident, who will be fully accountable for all payments for said improvements, and to hold Management free from harm or loss arising from claims of any other parties, regardless of cause, which might result from said work.

39. **Changes Become Part of Premises:** Any alterations or changes that Management does permit shall become part of the Premises (fixtures), and shall remain in the Premises at all times during and after the term hereof.

40. **Homeowner Associations:** The Premises may be located in a community that may maintain amenities such as a clubhouse, pool, golf, tennis, exercise facility, laundry, or similar amenities. With respect to such homeowner associations and/or amenities, Management makes no representations as to whether any association exists, whether the Owner is a member and is current with any applicable dues, whether such amenities are available to a non-owner Resident, including a resident. Management encourages Resident to fully investigate the availability of such amenities, and to determine whether such amenities would be available to a person in a tenancy situation, the cost thereof and any and all other factors which might be important to Resident in selecting this Premises. Resident hereby expressly releases Management of and from any and all duties to investigate such amenities and from any representations regarding such amenities whatsoever. Resident expressly acknowledges that Resident has made such independent inquiry as Resident so desires regarding any amenities offered by a community or homeowner's association and releases Management of and from any and all liability in connection therewith. If a homeowner's association exists, the Premises may be subject to various rules for the community. Resident herewith acknowledges that Resident is responsible for obtaining a copy of the homeowner or community association rules, reading them and complying with their terms. The terms of such rules and regulations are incorporated herein by reference as if fully set forth herein. Any breach thereof may constitute a default of this Lease. Should notice be sent to Management or Owner regarding a violation of said rules and regulations, Resident agrees to pay Management a $75.00 administration fee, plus any costs assessed by association. If the association should fine Management or Owner for the actions, inactions, conduct or behavior of Resident, or Resident's invitees or guests, for failure to comply with the rules and regulations or the community where Premises is located, Resident agrees t pay said fines within thirty days of notice by Management. Failure to pay said fines may result in a breach of this Lease.

41. **Agency Disclosure:**
    A. **Represent Owners, not Residents:** Management's office brokerage relationship policy is to represent Owners as Sellers and/or Landlords (Seller Agency and Owner Agency), Buyers (Buyer Agency), and Sellers and Buyers in the same transaction with Designated Agency, and Transaction Brokerage. Management is a licensed real estate broker, and as such is representing the Owner in this transaction unless otherwise described on the attached agency disclosure.
    B. **Authority over the Lease:** This Lease is between Resident(s) and Management. The Owner of the Premises has no authority over this Lease. Resident agrees not to communicate with the Owner while under this Lease. All parties acknowledge that National ERA Servicing, LLC is authorized by the Owner of the Premises to manage the subject Premises of this Lease. In the event that the management relationship is terminated during the term of this Lease, Resident hereby releases Management of and from any liability under this Lease, provided Management has notified Resident by certified and regular mail of the termination, including in said notice the following: effective date of termination, name and address to whom rent is to be sent, telephone number of person responsible for repair, and copy

- C **Buying the Property:** Resident acknowledges that Management has an exclusive brokerage relationship with the Owner of the Premises, which includes the payment by Owner to Management of a real estate commission, if Resident purchases the Premises. Resident agrees to communicate solely with Management regarding any interest or offers to purchase said Premises. Should the Resident decide to purchase the Premises, Resident recognizes Management as the procuring cause of sale. In the event that Resident wishes to contract with another real estate broker in the purchase of this Premises, Resident agrees to pay that brokerage personally, and not look to the Seller, or Management, for that broker's compensation. Should Resident breach this stipulation, and buy the Premises without inclusion of Management, Resident agrees to pay Management for damages, including but not limited to the real estate commissions Seller owes Management, collection costs, and attorney fees, if any.

42 **Lease renewal fee:** Resident agrees to pay a $50.00 Administration Fee at each Anniversary Date for a twelve month extension or renewal, or, $100 for a shorter-term renewal, such as anything less than twelve months.

43 **Receipt of Important Documents:** Resident acknowledges receipt of the following documents prior to executing this Lease: Booklet "Protect Your Family from Lead in Your Home", if the property was constructed prior to 1978.

44 **Legal Notice Fee:** Should Management be required by this Lease, or the Georgia Landlord Resident Law, to send a legal notice to Resident, Resident agrees to pay a $35.00 administrative fee. If eviction is filed and additional administrative fee of $250.00 will be charged.

45 **APPLIANCES:** NO APPLIANCES ARE INCLUDED IN THIS RENTAL CONTRACT! The Landlord assumes no responsibility for any appliances in the house. They are there solely at his convenience. They may be unreliable, If the appliances should fail to operate, THE LANDLORD WILL NOT REPAIR THEM. They will be removed at Tenants request at no charge, or Tenants can have them repaired at their own expense. However, no adjustment will be made in the rent. Any time the Landlord feels the appliance unsafe or in poor working order or condition, Tenants hereby authorize Landlord specifically to have access to the premises for the purpose of removing them, without prior notice, to prevent damage or harm.

46 **Maintenance Charge-Backs/Stand-Up Fees:** Resident acknowledges that the premises are in good order and repair, and resident accepts the premises "as is", unless otherwise indicated herein. Resident shall at his own expense, and at all times, maintain the premises in a clean and sanitary manner including all equipment, appliances, furniture and furnishings therein and shall surrender the same, at termination hereof, in as good condition as received, normal wear and tear excepted. Resident is responsible for any and all repairs whatsoever that shall be required to maintain the premises in livable condition. Management will make necessary repairs to the dwelling and systems including electrical, plumbing, heating and hot water heating with reasonable promptness after receipt of written notice from resident. Resident shall also be responsible for damages caused by his negligence and that of his family, or invitees, or guests. Should maintenance be done on the Premises, which servicing contractor reports was caused by the abuse or misuse of Resident of their invitees, Management shall provide the invoice for such repair to Resident, and Resident hereby agrees to pay such sum no later than the first day of the following month, which sum shall be deemed additional rent. Should Resident fail to pay said sum, by the first day of the month following receipt of the payment request, Resident may be deemed to be in default of the terms of this Lease.  Should an appointment be scheduled with Resident for any purpose and Resident does not appear as schedule, Resident agrees to pay Management $75.00 for the missed appointment.

**LIMITED SUPPORT:** The Tenants are advised that the Landlord is not able to provide the normal range of Support typically provide to tenants in apartment complexes. Tenants are expected to use their best judgment in resolving problems if they are to realize the rental discount indicated on page 1. Tenants are encouraged to perform all repairs for which they are qualified. If professional assistance is needed, or in the case of a maintenance emergency, Tenants should contact *one or more of the approved vendors that  does our work.* For routine inquiries, the repair center may be contacted by phone at (404) 996-0496. The rental discount is offered as an incentive for the Tenants to take responsibility for minor maintenance and repairs (and to pay the rent on time), thereby relieving the Landlord from this obligation. Therefore, anytime the Landlord is involved in maintenance *(other than approval for repairs costing more than the discount or providing the names and contact information for additional vendors)* or collections, Tenants will *not* be eligible to receive the discount in that month and the full rent will be due.

46 **Frozen Pipes:** Resident is responsible for ensuring that the premise(s) is appropriately heated during winter to avoid freezing pipes. Resident is responsible for repair costs for failure to keep the premises heated, and Management is not responsible for damages to resident's personal property in the event of such occurrence.

47 **Neighborhood Conditions:** Resident acknowledges that in every neighborhood there are conditions which different residents may find objectionable. It shall be Resident's duty to become acquainted with any present or future neighborhood conditions which could affect the property including without limitation land-fills, quarries, high-voltage power lines, cemeteries, airports, stadiums, odor producing factories, crime, schools serving the property, political jurisdictional maps and land use and transportation maps and plan. If Resident is concerned about the possibility of a registered sex offender residing in a neighborhood in which Resident is interested, Resident should review the Georgia Violent Sex Offender Registry available on the Georgia Bureau of Investigation website at www.state.ga.us/gbi/disclaim.html.

48 **Default:**
  - A **Default generally:** Resident shall be in default of this Lease upon the occurrence of any of the following:
    - i) Resident fails to cure any violation of Rules and Regulations set forth herein, or otherwise fails to abide by and

    ii) Resident violates the Rules and Regulations set forth herein three times during the term of the Lease regardless of whether such violations are cured.
    iii) Resident files a petition in bankruptcy (in which case this Lease shall automatically terminate and Resident shall immediately vacate the Premises leaving it in the same condition it was in on the date of possession, normal wear and tear excepted.)
    iv) Resident fails to timely pay rent or other amounts owed to Management.
    v) Resident fails to reimburse Management for any damages, repairs and costs to the Premises or Property (other than normal wear and tear) caused by the actions or neglect of Resident or members of Resident's household and their invitees, licensees and guests. All rights and remedies available to Management by Law or in this Lease shall be cumulative and concurrent.

  B  **Effect of Default:** If Resident defaults under any terms, condition or provision of this Lease, Management shall have the right to terminate this Lease by giving notice to Resident and to pursue all available legal and equitable remedies to remedy the default. Such termination shall not release Resident from any liability for any amount due under his Lease. All rights and remedies available to Management by laws or in this Lease shall be cumulative and concurrent.

49 **Notices.**
  A  **All Notices Must be in Writing:** All notices, including but not limited to offers, counteroffers, acceptances, amendments, demands, notices of termination or vacating and other notices, required or permitted hereunder shall be in writing, signed by the party giving the notice.
  B  **Method of Delivery of Notice:** Subject to the provisions herein, all notices shall be delivered either: (1) in person; (2) by an overnight delivery service, prepaid; (3) by facsimile transmission (FSX); or (4) by registered or certified U.S. mail, pre-paid, return receipt requested.
  C  **When Notice is Deemed Received:** Except as may be provided herein, a notice shall be not be deemed to be given, delivered, or received until it is actually received. Notwithstanding the above, a notice sent by FAX shall be deemed to be received by the party to whom it was sent as of the date and time it is transmitted provided that the sending FAX produces a written confirmation showing the correct date and the time of the transmission and the telephone number referenced herein to which the notice should have been sent.
  D  **Notice by FAX or email to Management:** Notices by fax or email to Management or the affiliated licensee of Management may only be sent to the email address or fax number, if any, of Management or the affiliated licensee of Management set forth in the Broker/Licensee Information section of the signature page of this Lease (or subsequently provided by Management set forth in the licensee of Management following the notice procedure, then notice by the means of communication not provided shall not be valid for any purpose herein. Notice to Management or the affiliated licensee of Management that is working with, but not representing a party, shall not be deemed to be notice to that party.
  E  **Certain types of signatures are originals:** A facsimile signature shall be deemed to be an original signature for all purposes herein. An e-mail notice shall be deemed to have been signed by the party giving the same if the e-mail is sent from the e-mail address of that party and is signed with a "secure electronic signature" as that term is defined under Georgia law.

### TENANT PROTECTION PLAN

    Tenant agrees to opt in to the Tenant Protection Plan (TPP). This will remove their obligation for certain but not all maintenance items. An additional $200 per year or $20 per month paid by credit card and be recurring on the 1st of the month. This will be charged to the tenant for the following items to be performed by landlords representatives 3 times per year at regularly scheduled times.
    1. Replace HVAC Filters.
    2. Replace Smoke Detector batteries
    3. Spray exterior perimeter for bugs and treat for fire ants.
    4. Inspection of Electrical
    5. Inspection of Plumbing
    6. Inspection of HVAC
    All other items under section 24 ACCOUNTABILITY will continue to be in full force and effect.

    Tenant will participate in TPP    Initials _____  _____

**Additional terms:** ____

**TENANT OBLIGATIONS:** Tenants are to meet certain obligations. The following are made a part of this rental contract, which the Tenants swear to be bound by:

a. Tenants promise that nothing will be done which might place the Landlord in violation of the applicable building, housing, occupational, zoning, health codes, laws, or neighborhood covenants.

b. Tenants certify that Tenants, their family, invitees or guests will not engage in any illegal activity while on the premises.

c. Tenants agree to keep the dwelling clean and sanitary, to remove garbage and trash before they can attract pests, to maintain the plumbing in good working order to prevent leaks, stoppages, discharges from pipes, faucets, drains, fixtures, etc.

d. Tenants agree to operate all electrical, plumbing, sanitary, heating and cooling, mechanical
and ventilating systems and other equipment properly, safely and reasonably to prevent damage or harm to the equipment or to the Tenants or their guests.

e. Tenants agree to allow landlord or landlords agent to perform preventative maintenance (Tenant Protection Plan) and document in the form of pictures that work has been completed. The tenant protection plan is required and will be part of this agreement.

f. Tenants assure Landlord that Landlord's property will be safeguarded against damage, loss, removal or theft and maintained as required to keep it in good working order.
Tenants pledge that their conduct and that of their family, friends, guests and visitors will not disturb or endanger others.

g. Tenants agree to grant access at all times for protection of the premises or property in Accordance with the states statutes and, upon reasonable notice, to give the Landlord or Landlord's agent access to the premises for inspecting, repairing or showing the property. Tenants specifically authorize the Landlord or Landlord's agent to enter the premises for purposes of serving legal notices any time the rent has not been received and is overdue or the contract has been terminated. Tenants further grant the Landlord or Landlord's agent permission to enter the premises at any time to protect the Landlord's equipment or to make repair estimates.

h. Tenants agree not to permit any deterioration of the property during the period of
this tenancy including woodwork, floors, walls, fixtures, appliances, furnishings, windows, doors, plumbing, electrical, cooling and heating, mechanical systems, lawns, all landscaping, fences, shrubbery, patios, etc.

i. The tenant agrees to maintain the landscaping and the outside of the home. This includes that the lawn gets mowed as, no weeds in the flowerbeds, yard get edged, and bushes and shrubs are trimmed. The yard also must be fertilized 3times a year and gutters cleaned out once a year after the leaves have dropped.

j. Tenants promise to pay the agreed upon rent promptly as spelled out in paragraph 4 including any pet, extra visitor, and/or late charges, plus failed transaction fees, when requested by the Landlord.

**NOTE: FAILURE TO PERFORM THE ABOVE OBLIGATIONS WILL BE GROUNDS FOR TERMINATION OF THIS CONTRACT AND LOSS OF ALL RIGHTS AND BENEFITS PROVIDED FOR HEREUNDER!**

**ACCEPTANCE DATE:** IN WITNESS WHEREOF, the parties hereto have caused these presents to be signed in person or by a person duly authorized,

This _28_ day of _Feb_ 20_15_.

National ERA Services, LLC

By: _____

X _____
RESIDENT

X _____
CO-RESIDENT

## OPTION AGREEMENT

FOR AND IN CONSIDERATION of the Optionee's faithful compliance with all terms of the lease agreement entitled Georgia Lease Agreement between the parties hereto dated February 28, 2015 (hereinafter referred to as the "Lease") and of the option consideration money, the undersigned (hereinafter referred to as "Optionor") hereby agrees to the following Option to purchase certain real property known and described as 1608 Picadilly Ct Conyers GA 30013

1. Provided Optionee is not then in default under any of the terms and conditions of said Lease, he/she shall have the option to purchase the leased premises on the following terms and conditions:
    a. The total purchase price shall be one hundred and eighty thousand Dollars ($180,000.00)
    b. The period during which the Optionee may exercise his option to purchase these premises commences, March 1, 2015 and ends February 28, 2018.

2. Option Consideration of __one thousand__ Dollar ($1000.00) shall be paid as follows: upon execution .

    Such Option Consideration shall apply in full to the purchase price. Any security deposit remaining under the Lease Agreement as of the exercise of this Option shall also be applied to the purchase price. It is expressly understood and agreed that no equity position is established by the above credits until the Option is exercised.

3. Any monies received by Optionor shall first be applied to any balances due and not paid under this Option Agreement and then to any amounts due under the Lease.

4. This option may be extended by mutual consent of optionor and optionee in writing.

5. As further consideration in granting this Option, the Optionee shall maintain the home and premises and handle any repairs including lawn maintenance, landscaping and gutter cleaning and maintenance. If Owner or Lessor has to provide any repairs or maintenance during the term of this Option, such expenses shall be immediately reimbursed by the Optionee or, at the sole discursion of the Owner, such expenses shall be worked out in a separate payment agreement

Initials _____

6. Notice of proposed exercise of this Option shall be delivered by written notice not later than forty-five (45) days prior to the date on which the Option shall be exercised. Closing of the sale shall occur not later than the termination date of this OptionAgreement unless prior written consent has been obtained from Optionor.

7. This Option is not transferable to any other party and can be exercised only by the individual(s) who have signed the Lease, acting in unison. All covenants and terms of the Lease Agreement and this Option Agreement must have been faithfully performed in every particular, the Optionor's judgment to be the sole deciding factor, or this Option Agreement shall become null and void and of no further force, without notice. If the rent is received after the 5th day of the month in any given month due or any option payment is received after its due date, this Option agreement shall become null and void and of no further force, without notice. This Option shall be void upon termination of the Lease for any reason.

8. In the event the property is not purchased pursuant to this Option, there shall be no refund of the Option Consideration money nor any portion of the rent.

9. This Option shall run with the property and shall be binding upon any subsequent purchaser of the property. Property will be conveyed subject to all liens, encumbrances, easements, and restrictions of record.

10. Optionee acknowledges he/she has inspected the property and accepts property in "as is" condition. Any changes Optionee wishes to make to the property must be approved by the Optionor or Agent in writing prior to the project commencement. No changes or additions typically requiring a building permit may be made during the term of this Option, without first entering into a separate agreement which specifically outlines that Optionee may not permit any liens to be placed on the property during this Option period as a result of any changes he desires.

11. Time is of the essence of this Agreement.

12. The following stipulations shall control in the event of conflict with any of the forgoing:

_____

I/We have read and understand both the Lease Agreement and this Option Agreement. All questions have been answered satisfactorily and I/We acknowledge receipt of an executed copy of each agreement. We also understand that the written and printed material contained herein is the sole agreement between parties hereto and that no verbal warranties expressed or implied, shall be in force. Parties agree that this Option Agreement may be amended only in writing and shall not be recorded.

ACCEPTED IN FULL
AS WRITTEN THIS DATE:

_Jul 28_, _2015_

_____
Optionor

_____ SSN# _1576_
Optionee

_____ SSN# _____
Optionee

# ADDENDUM TO RENTAL CONTRACT
## DRUG-FREE HOUSING

In consideration of the execution or renewal of a Rental Contract of the dwelling unit identified in the Rental Contract, Owner/Management and Resident agree as follows:

1. Resident, any member of the residents' household, guest or other person under the resident's control shall not engage in criminal activity, including drug-related criminal activity, on or near project premises. "Drug-related criminal activity" means the illegal manufacture, sale, distribution, use, or possession with intent to manufacture, sell, distribute, or use, of a controlled substance (as defined in section 102 of the Controlled Substances Act [ 21 U.S.C. 802 ]).

2. Resident, any member of residents, household, or a guest or other person under the resident's control shall not engage in any act intended to facilitate criminal activity, including drug-related criminal activity, on or near project premises.

3. Resident or members of the household will not permit the dwelling unit to be used for, or to facilitate criminal activity, including drug-related criminal activity, regardless of whether the individual engaging in such activity is a member of the household or a guest.

4. Resident or member of the household will not engage in the manufacture, sale, or distribution of illegal drugs at any location, whether on or near project premises or otherwise.

5. Resident, any member of the resident's household, guest or other person under the resident's control shall not engage in acts of violence or threats of violence, including, but not limited to, the unlawful discharge of firearms, on or near project premises.

6. VIOLATION OF THE ABOVE PROVISIONS SHALL BE A MATERIAL VIOLATION OF THE RENTAL CONTRACT AND GOOD CAUSE FOR TERMINATION OF TENANCY. A single violation of any of the provisions of this addendum shall be deemed a serious violation and a material noncompliance with the Rental Contract. It is understood and agreed that a single violation shall be good cause for termination of the Rental Contract. Unless otherwise provided by law, proof of violation shall not require criminal conviction, but shall be by a preponderance of the evidence.

7. In case of conflict between the provisions of this addendum and any other provisions of the Rental Contract, the provisions of the addendum shall govern.

8. The Rental Contract Addendum is incorporated into the Rental Contract executed or renewed this day between Owner and Tenant.

[resident 1] _____  Date: 2/28/15

[resident 2] _____  Date: 2/28/15

Management _____  Date: 2/28/15
National ERA Servicing, LLC

## Certificate of Service

I certify that I am over the age of 18 and that on the date written below a copy of the foregoing Motion for Relief from the Automatic Stay and Notice of Hearing was served by email or by first class U.S. Mail, with adequate postage prepaid on the following persons or entities at the addresses stated:

The following parties have been served via U.S. Mail:

Roy Lester White
1608 Piccadilly Court NE
Conyers, GA 30013

Karen King
King & King Law LLC
215 Pryor Street
Atlanta, GA 30303

Tamara Miles Ogier
Ogier, Rothschild & Rosenfeld, PC
Chapter 7 Trustee
170 Mitchell St. SW
Atlanta, GA 30303

Dated: August 13, 2015

/s/ Shannon D. Sneed
Shannon D. Sneed, Bar No. 665610
SHANNON D. SNEED & ASSOCIATES, P.C.
P.O. Box 1245
2112 Lee Street
Covington, Georgia 30015
(770) 788-0011 *Telephone*
(770) 788-1702*facsimile*
bankruptcy@sneedlaw.net
*Attorneys for NATIONAL ERA SERVICING, LLC*